```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
    WILLIAM J. MCGOWAN,                                     :
                                                            :  **MEMORANDUM DECISION**
                                        Plaintiff,          :  **AND ORDER**
                                                            :
                  - against -                               :  20-cv-3514 (BMC)
                                                            :
    COMMISSIONER OF SOCIAL                                  :
    SECURITY,                                               :
                                                            :
                                        Defendant.          :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled for the purpose of receiving disability insurance benefits under the Social Security Act. The ALJ found that plaintiff has severe impairments of coronary artery disease, osteoarthritis in both knees, and obesity, but the ALJ also found that plaintiff had sufficient residual functional capacity to perform light work except that he could only occasionally operate foot controls with both feet; could only occasionally climb, balance, stoop, kneel, crouch and crawl; and could tolerate only frequent (as opposed to constant) exposure to extreme heat or cold or pulmonary irritants and hazards.

Plaintiff's perfunctory brief sets forth three points of error. His first point is that the ALJ failed to properly evaluate plaintiff's complaints. It is based on the erroneous assumption that the ALJ was required to accept at face value plaintiff's own description of the severity of his symptoms. Plaintiff has pulled out some of the factors identified in 20 C.F.R. § 404.1529(c)(3), which cover "[c]onsideration of other evidence" and are part of the broad, lengthy regulation entitled "How We Evaluate Symptoms." Plaintiff has then juxtaposed those factors with one or

more snippets from his testimony. From there, plaintiff argues that, by not crediting those snippets, the ALJ did not accurately apply the particular factor.

For example, plaintiff alludes to subsection (c)(3)(iii) of the regulation, which states that the ALJ will consider "[p]recipitating and aggravating factors." Plaintiff then notes his testimony on standing: "30 minutes and I'm really feeling it on my joints and everything. . . . I'm usually look [sic] to either lean on something or sit down." Plaintiff claims that the ALJ was required to take this statement and other postural limitations expressed by him into account.

The ALJ's opinion reflects as careful an evaluation of a claimant's testimony as a reviewing court could want in these kinds of proceedings. With regard to plaintiff's expressed difficulties about standing, the ALJ first noted plaintiff's testimony, stating, "The claimant alleged that his ability to stand is 30 minutes." The ALJ then noted the following, which applies equally to plaintiff's complaints about standing and his other postural complaints:

- [T]he claimant asserted that his knees . . . are the primary reason as to why he is unable to work. However, since the alleged onset date, the claimant has not had any knee treatment including conservative treatment. . . . Moreover, when asked by medical professionals, the claimant denies all musculoskeletal complaints. If the claimant's bilateral knee condition were as limiting as what has been alleged, the undersigned would have expected the record to demonstrate intensive efforts for treatment as well as complaints of knee pain and/or limitations. These inconsistencies . . . detract from the reliability of the claimant's testimony.

- On a consistent basis, the claimant presents to medical appointments with normal gait, full strength throughout, almost full range of motion throughout, intact reflexes, and intact sensation. . . . If the claimant were unable to walk more than 4 to 5 blocks as alleged, the undersigned would expect abnormal gait to be documented in the record consistently. Moreover, the undersigned would expect the claimant to have reported this significant limitation to medical professional [sic]. Furthermore, pain behaviors are not documented in the record.

- In addition to treatment records not supporting the claimant's assertions, the consultative examination . . . further demonstrates inconsistencies. During testing, the claimant demonstrated full strength throughout, full range of motion of the knees, intact knee jerk reflexes, and no swelling was observed . . . . The consultative examination notes further detracts [sic] from the claimant testimony, as he asserted to experiencing lower extremity swelling . . . [but] on a consistent

2

basis, treatment records specifically document that the claimant does not have lower extremity swelling.

Similarly, plaintiff complains that the ALJ did not comply with subsection (c)(3)(iv), which directs consideration of the "type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." Plaintiff relies on his testimony that he had side effects of nausea and constant diarrhea, and when he takes his prescribed Albuterol, it "makes [him] very jittery." He also claims that the ALJ failed to take into account his testimony that his medications used to make him bleed excessively when he used a finger-prick test to check his blood sugar level (which he doesn't need to do anymore because he uses a continuous glucose monitoring device), and that injections he receives cause his stomach to be "all black and blue." The ALJ, however, thoroughly discussed plaintiff's testimony about side effects and found it wanting:

> The undersigned notes that the claimant also alleged that medication side effects further limit his ability to work. Specifically, the claimant asserted to experiencing nausea and constant diarrhea. However, this is inconsistent with what the claimant self-reported on June 21, 2017, on a function report. On the function report, the claimant denied medication side effects . . . . Moreover, the claimant does not report medication side effects to medical professionals. Furthermore, when asked by medical professionals, the claimant consistently denies both diarrhea and nausea.

Virtually all of the alleged inadequacies in the ALJ's decision were evaluated similarly.

To the extent that plaintiff is arguing that the ALJ had to mention every alleged side effect, the regulation does not require it. Nor did the ALJ have to address plaintiff's historical rendition of side effects from medication or procedures that he no longer has, like excessive bleeding from the finger-prick test. The ALJ plainly found plaintiff to be an unreliable reporter of his symptoms and side effects, and the ALJ could hardly have been more definitive in giving the reasons why he evaluated plaintiff's testimony that way.

In each instance where the ALJ rejected plaintiff's testimony, he did it with extensive, accurate record citations showing the contradictions. This is not a case where plaintiff has accused the ALJ of "cherry-picking" the record, nor could he – as the ALJ explained, numerous, repeated physical examinations refuted plaintiff's testimony, and the ALJ cited to them. Indeed, plaintiff has not argued that his testimony was consistent with the reports of examinations or objective medical testing. There is no way to do so on this record.

Moreover, I note that to the extent that the ALJ did not expressly address some of plaintiff's testimony, it is because he adopted and incorporated that testimony into plaintiff's work limitations. For example, plaintiff complains that bending and stooping would cause him to feel dizzy. The ALJ therefore limited plaintiff to work requiring only occasional stooping, kneeling, crouching, climbing, or balancing. I therefore reject plaintiff's argument that the ALJ failed to comply with 20 C.F.R. § 404.1529.

Plaintiff's second point of error is a repackaging of his first, this time relying on a Social Security Ruling, SSR 96-8p, instead of a regulation. This policy interpretation ruling sets forth general guidance for determining RFC. Plaintiff cites the general admonition that the RFC determination "must be based on *all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (1996). Relying again solely on his own testimony, plaintiff argues that the ALJ didn't consider his testimony about his finger-prick tests (again, which he no longer does), his need to take three different medications, his need to do saline rinses twice a day, his annual endoscopy, and his sensitivity to dust in the subway. Plaintiff describes this medication regime and sensitivity as a disruption to his ability to work that the ALJ did not consider.

The argument is frivolous when held up against this record and the ALJ's decision. First of all, this is the second time that plaintiff notes that he uses the finger-prick test for his blood

sugar level, and the second time I am compelled to point out that he no longer has to use the finger-prick test, so that is immaterial to his RFC. Second, plaintiff's regime requires three medications in the morning, three at night, and one during the day. That means he only has to take one during work hours, and it is patently obvious that this does not disrupt the workday. Similarly, his twice-a-day saline rinse can be done before and after work. His annual endoscopy takes one out of 365 days of the year. And as far as sensitivity to dust, the ALJ accommodated that by restricting the amount of exposure to heat, cold, and pulmonary irritants and hazards – even though, as the ALJ accurately found, "[o]n a consistent basis, both pulmonary examinations and respiratory examinations are unremarkable." An ALJ is not obligated to state the patently obvious.

Plaintiff's final point of error is equally baseless. Plaintiff asserts that the ALJ did not comply with the general provision in SSR 96-8p stating that the "RFC assessment must always consider and address medical source opinions." 1996 WL 374184, at *7. He claims that the ALJ did not consider and address the opinion of State agency consultant and internist Dr. L. Sklar. Plaintiff's one-paragraph argument consists of reciting Dr. Sklar's opinions, and then adding one sentence at the end, asserting, "Therefore, the ALJ's decision should be vacated and the case remanded for further consideration of the effects of [p]laintiff's osteoarthritis, coronary artery disease, asthma and obesity on his RFC." Significantly, plaintiff does not assert, and could not assert, that the ALJ did not already consider Dr. Sklar's opinions in detail, or that the ALJ did not discuss plaintiff's osteoarthritis, coronary artery disease, asthma, and obesity. To the contrary, the ALJ discussed each of those impairments in detail. And plaintiff nowhere explains what he means by "further consideration."

The ALJ's discussion of Dr. Sklar's opinion – the ultimate conclusion of which was, as the ALJ found, that plaintiff can perform light work – was thorough. The ALJ adopted Dr. Sklar's opinion that the evidence did not fully support plaintiff's subjective complaints regarding limitations due to his breathing, knees, and cardiac history, and the ALJ incorporated the limitations suggested by Dr. Sklar in his RFC finding. Moreover, the ALJ adopted those limitations despite the opinion of another consulting examiner, Dr. Ernst Ducena, that plaintiff didn't need them.

Plaintiff's motion for judgment on the pleadings [10] is denied, and the Commissioner's cross-motion [13] is granted. The Clerk is directed to enter judgment dismissing this case.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
       May 14, 2021